UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KENNETH MACE,

    Plaintiff,

v.                                                   Case No. 2:20-cv-591-JLB-NPM

M&T BANK,

    Defendant.
_____/

## ORDER

Defendant M&T Bank ("M&T") moves for summary judgment on Plaintiff Kenneth Mace's negligence and unjust enrichment claims. (Doc. 39.) After careful review of the record, the parties' briefs, and viewing the facts in the light most favorable to Mr. Mace, M&T's motion for summary judgment is **GRANTED**.

## BACKGROUND

In 2006, Mr. Mace signed a promissory note in the amount of $480,000 in favor of M&T's predecessor. (Doc. 42 at 13, 106.)[1] In connection with the note, Mr.

---

[1] M&T's motion includes a Statement of Facts as required by the Instructions Regarding a Statement of Material Facts for a Motion for Summary Judgment, found on the Court's webpage. See https://www.flmd.uscourts.gov/sites/flmd/files/judges/forms/flmd-badalamenti-instructions-regarding-a-statement-of-material-facts-for-a-motion-for-summary-judgment.pdf. Contrary to the instructions, however, Mr. Mace's response (Doc. 44) does not include a "Response to Statement of Material Facts . . . admitting and/or denying each of the moving party's assertions in matching numbered paragraphs . . . set[ting] forth a pinpoint citation to the record where the fact is disputed." Those instructions further notified Mr. Mace that "the Court will deem admitted any fact in the statement of material facts that the opposing party does not specifically controvert, provided the moving party's statement is supported by evidence in the record." To the extent the parties'

Mace signed a mortgage encumbering real property he owned. (Id. at 14–15, 109.) He began leasing the property to various third party tenants prior to 2013. (Id. at 28, 33.) Following Mr. Mace's purported default on the note and mortgage, M&T initiated a series of unsuccessful foreclosure actions. (Doc. 4 at 2–3, ¶¶ 6–16.)

In 2015, M&T initiated a foreclosure action against Mr. Mace styled as M&T Bank v. Mace, Lee County Case No. 15-CA-50450. (Id. at 3, ¶ 17.) In 2016, M&T obtained a final judgment in the action, subsequently purchased the property at a foreclosure sale, and became the record title owner of the property. (Id. at 3–4, ¶¶ 18–22.) In March 2020, the Second District Court of Appeal reversed the final judgment, and in April and May 2020 the trial court vacated the final judgment, the foreclosure sale, and the certificate of title to M&T. (Id. at 4, ¶¶ 24–26.)

Prior to receiving its certificate of title and through March 2020, M&T used multiple vendors to inspect and ensure proper maintenance of the property. (Doc. 39-2 at 20, 52–53.) Between July 2016 and May 2019, M&T's efforts to maintain and preserve the property included rekeying the property, documenting the property condition, beginning maintenance for damaged or deteriorated items, grass cuts, and exterior maintenance. (Id. at 34–35.) M&T also removed debris scattered around the property, including fallen tree debris following a hurricane. (Id. at 35.)

---

statements present a factual dispute, and Mr. Mace has complied with this Court's instructions, the facts are viewed in a light most favorable to Mr. Mace.

Specifically, on July 22, 2016, M&T's vendor visited the property for an inspection and determined the property to be secured and occupied. (Id. at 26–30.)[2] Because the property was occupied, M&T took no further actions at that time. (Id. at 29–30.) On August 17, 2016, M&T's vendor again inspected the property and reported the same occupied and secured condition. (Id. at 30.) On May 9, 2017, M&T first received information that the property was vacant and unsecured. (Id. at 32.) The grass was cut the next day, and M&T received information indicating the property was secured. (Id.)

On November 28, 2018, M&T's vendor spoke with Mr. Mace and subsequently entered notes "indicat[ing] that the borrower called [M&T's vendor] regarding notices placed on his property and indicating that he did not currently occupy the home but he has somebody that intends to move in." (Id. at 43–44.)

On May 3, 2019, M&T received its next indication that the property may be unsecured. (Id. at 33.) On May 12, 2019, M&T sent a vendor to secure the property and change the locks. (Id. at 36–37.) On June 22, 2019, M&T's vendor inspected the property and determined the front locks had been changed and the property was occupied by unknown parties. (Id. at 38–39.) At some point, "the police were called and the guys had a lease agreement and it wasn't M&T on there . . . [s]o it was a fraudulent thing going on." (Doc. 42 at 37.) M&T spoke with a sheriff's deputy who

---

[2] The property was occupied by Mr. Mace's tenant, Dwight Allen, until sometime in or around August 2016. (Doc. 42 at 29, 33.)

3

"looked at whatever lease agreement . . . referenced by the mortgagor and when he spoke with [the vendor] and deemed the lease to be legitimate." (Doc. 39-2 at 63.)

Based on Mr. Mace's November 28 conversation with M&T's vendor, M&T believed the occupants were tenants of Mr. Mace. (Id. at 43.) Additionally, because of the ongoing appeal challenging the final judgment, "M&T would not move to remove or evict any occupants until [M&T's] ownership of that property was confirmed." (Id. at 44–45.)

In March 2020, shortly before ownership of the property returned to Mr. Mace, M&T received information from Lee County indicating the property had been deemed a "dangerous building." (Id. at 58.) M&T contacted code enforcement officers to determine "the specifics related to the designation of a dangerous building and what specifically was needed to address those concerns." (Id.) M&T "spoke with the building inspector, and he confirmed that the condition reflected what's written here, that the electrical system had been compromised, power removed from site, stolen power, no working sanitation, no smoke detectors, and unsanitary living conditions." (Id. at 59.) M&T obtained bids for the necessary repairs, but "[b]y the time the bids were received and reviewed, the appeal had been decisioned and the property reverted back to Mr. Mace." (Id. at 59–60.)

Mr. Mace brought suit in state court, raising four claims: negligence (Count I), unjust enrichment (Count II), conversion (Count III), and malicious prosecution (Count IV). (Doc. 4.) The action was removed to this Court based on diversity jurisdiction. (Doc. 1); 28 U.S.C. § 1332(a). The conversion and malicious

4

prosecution counts were dismissed. (Doc. 12 at 4 n.2; Doc. 27; Doc. 28.) On the remaining negligence and unjust enrichment counts, Mr. Mace seeks damages for the cost of repairing or replacing the property and lost rent. (Doc. 4 at 5–6.) M&T has moved for summary judgment on both counts. (Doc. 39.) Although Mr. Mace initially failed to respond to the motion, he filed a response in opposition upon the Court's order. (Docs. 43, 44.)

## SUMMARY JUDGMENT STANDARD

In diversity actions, federal courts apply state substantive law and federal procedural law. See Pussinen v. Target Corp., 731 F. App'x 936, 938 (11th Cir. 2018). Because summary judgment is a procedural matter, the Federal Rules of Civil Procedure govern. Id. Rule 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If this showing is made, "the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (quotation omitted).

"A fact is 'material' if it has the potential of 'affect[ing] the outcome' of the case." Id. (citation omitted). "And to raise a 'genuine' dispute, the nonmoving party must point to enough evidence that 'a reasonable jury could return a verdict for [him].'" Id. (citation omitted). "When considering the record on summary judgment 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Id. (citation omitted). "[A]n inference is not reasonable if it

is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321, 1324 (11th Cir. 1982) (internal quotation marks and citation omitted).

## DISCUSSION

M&T is entitled to summary judgment on Mr. Mace's negligence and unjust enrichment claims. First, damages on both counts are unavailable because, as to the relevant conduct, M&T relied on a state court judgment and certificate of title. Second, as to negligence, Mr. Mace has not established any duty that was breached, and M&T is not liable for the intervening acts of third parties. Last, as for the unjust enrichment claim, any benefit relating to ownership of the property has been returned to Mr. Mace, and he has not identified any other benefit conferred to M&T.

### I. Negligence

As M&T correctly contends, it is not liable for damages, and Mr. Mace was not injured by any breach of a duty M&T owed him.

**1. Damages are unavailable.**

As an initial matter, damages are unavailable under Florida law because, as to its relevant conduct, M&T relied on a state court judgment and certificate of title.[3] And as Mr. Mace acknowledges, the trial court presiding over the foreclosure action entered a final judgment of foreclosure in favor of M&T. (Doc. 4 at 3, ¶ 18.) M&T purchased the property at a foreclosure sale and became the owner in 2016.

---

[3] M&T previously raised this as a basis to dismiss Mr. Mace's complaint. (Doc. 8 at 5.) The Court noted that the argument constituted an affirmative defense better suited for resolution on summary judgment. (Doc. 27 at 6–8.)

6

(Id. at 3–4, ¶¶ 18–22.)  Notwithstanding the pending appeal, M&T's reliance on the then-valid state court judgment constitutes a defense to Mr. Mace's claims for damages.

As Florida courts have explained:

> A judgment or decree which is voidable, as being erroneous, is not a nullity.  Until superseded, reversed, or vacated, it is valid, is binding everywhere, has all the attributes and consequences of a valid adjudication, [a]nd affords complete protection to one who acts in reliance upon the adjudication.  Such an adjudication is conclusive, and is not subject to collateral attack.

Laird v. Vogel, 334 So. 2d 650, 651 (Fla. 3d DCA 1976) (citation omitted).  The facts in Laird are instructive.  There, a tax deed purchaser took possession of property and removed the prior owner's personal belongings under a writ of assistance.  Id. at 650.  The trial court later rescinded the order for possession and returned the property to the owner who sued the purchaser and her attorney for damages.  Id. at 651.  In finding damages against the purchaser and attorney unavailable, the court explained that the "law demands that we uphold actions authorized by an order of the court and taken under a presumptively valid tax deed."  Id.

Mr. Mace's attempts to distinguish Laird on the basis that "M&T controlled all aspects of the dispute, made all the decisions that ultimately led to [his] damages, and was fully informed every step of the way" is unavailing.  (Doc. 44 at 3.)  Indeed, the tax deed purchaser and attorney in Laird also "made decisions" that purportedly caused the plaintiff's damages.  Even more, the court observed that the attorney in Laird had "apparent knowledge of the circumstances surrounding [the

7

owner's] property <u>at the time of the tax sale</u>." 334 So. 2d at 651 (emphasis added). Other courts have similarly found that actions taken in reliance on a court order are not subject to liability. <u>See, e.g.</u>, <u>In re Kmart Corp.</u>, Bankr. No. 02-B-02474, 2006 WL 952042, at *9 n.25 (Bankr. N.D. Ill. Apr. 11, 2006) (citing <u>Laird</u> for proposition that reliance on order provides protection "against personal liability for damages"); <u>see also</u> <u>Rutuelo v. State</u>, 449 N.Y.S.2d 419, 469 (N.Y. Ct. Cl. 1982); <u>Trook v. Lafayette Bank and Trust Co.</u>, 581 N.E.2d 941, 946 n.9 (Ind. Ct. App. 1991).

      Here, despite the prior unsuccessful lawsuits and although Mr. Mace asserts that M&T "does not challenge the foreseeability of the return of the property to [him]," (Doc. 44 at 4 n.3), there is no evidence demonstrating that M&T engaged in fraud to obtain the final judgment of foreclosure. Further, although the final judgment, foreclosure sale, and certificate of title were ultimately vacated, Mr. Mace does not point to any evidence showing that M&T did not act within its rights under the final judgment and certificate of title. Accordingly, because Mr. Mace seeks damages in his negligence claim, M&T's reliance on a then-valid judgment constitutes a complete defense.

      The remaining cases cited by the parties, as noted by M&T, are distinguishable. For example, in <u>Baum v. Heiman</u>, 528 So. 2d 63 (Fla. 3d DCA 1988), the court determined that a third party could not be liable for restitution following a reversed judgment but suggested that a party to the judgment could be. However, <u>Baum</u> relates to a claim for <u>restitution</u>, not damages, following a claimant's payment to satisfy a judgment. There is no such payment or claim for

8

restitution here.  Additionally, in Sundie v. Haren, 253 So. 2d 857 (Fla. 1971), decided before Laird, the Florida Supreme Court concluded that, generally, restitution may be awarded against parties when an order is reversed.  253 So. 2d at 859.  In support, the court cited Restatement of the Law, Restitution, section 74, which relates to restitution and provides in part:

> (f) Liability of judgment creditor for losses.  The judgment creditor is not liable for losses not caused by his mismanagement of the property (see Illustration 15) . . .
>
> Illustration 15.
>
> In an action of ejectment brought by A against B, A obtains possession of Blackacre which he occupies for two years, until the judgment is reversed.  During that period fires for which A was not at fault destroy valuable timber upon Blackacre.  B is entitled to restitution of Blackacre but not to compensation for the loss.

Restatement of the Law, Restitution, § 74; see also Simms v. City of Tampa, 42 So. 884 (Fla. 1906) (relating to restitution, not damages).

Restitution of the property has already been provided.  And as will be explained, Mr. Mace acknowledges that third parties, not M&T, damaged the property.  Moreover, to the extent the Restatement is applicable, Mr. Mace points to no evidence establishing that the damage resulted from M&T's mismanagement of the property.  Indeed, M&T maintained and secured the property until it believed the property was occupied by Mr. Mace's tenants—consistent with a seemingly valid lease agreement.

In summary, M&T's reliance on the state court judgment of foreclosure and certificate of title constitutes a defense to Mr. Mace's negligence claim.

9

### 2. Mr. Mace has not shown a prima facie case of negligence.

Even assuming M&T's reliance on the state court's judgment and certificate of title does not constitute a defense to the negligence claim, Mr. Mace has not shown that M&T was negligent. In Florida, negligence has four elements: "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." Estate of Rotell ex rel. Rotell v. Kuehnle, 38 So. 3d 783, 788 (Fla. 2d DCA 2010) (citation omitted).

Beginning with duty, Florida law recognizes four sources that give rise to a duty: "(1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case." Limones v. Sch. Dist. of Lee Cnty., 161 So. 3d 384, 389 (Fla. 2015) (citing McCain v. Fla. Power Corp., 593 So. 2d 500, 503 n.2 (Fla. 1992)). As to a duty based on the general facts of the case, the question is "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." McCain, 593 So. 2d at 502 (citation omitted). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id. at 503 (quotation omitted).

Mr. Mace does not identify the source of the duty he alleges M&T breached. He cites no statute or regulation, common law interpretation of the same, other

10

source in common law, or the general facts of the case in support. In all events, Mr. Mace has not established that, in these circumstances, M&T owed him any duty to, for example, protect the property from third parties. Even if M&T had such a duty, Mr. Mace has not pinpointed evidence showing that M&T breached that duty.

Instead, M&T has established that, between September 2016 and mid-2020, before title to the property returned to Mr. Mace, M&T undertook reasonable efforts to maintain and preserve the property. For example, M&T's efforts included rekeying the property to secure it, documenting the property condition, beginning maintenance for damaged or deteriorated items, grass cuts, and general exterior maintenance. (Doc. 39-2 at 34–35.) Although M&T initially learned the property may be vacant and unsecured on May 9, 2017, M&T had the grass cut and received information indicating the property was then secured. (Id. at 32.) M&T did not receive any other indication that the property may be unsecured until May 3, 2019. (Id. at 33.) Less than two weeks later, M&T sent a vendor to secure the property and change the locks. (Id. at 36–37.)

On June 22, 2019, M&T's vendor visited the property and determined it was occupied by unknown parties. (Id. at 38–39.) Notably, the vendor had previously spoken with Mr. Mace on November 28, 2018 and entered notes "indicat[ing] that the borrower called [M&T's vendor] regarding notices placed on his property and indicating that he did not currently occupy the home but he has somebody that intends to move in." (Id. at 43–44.) Even more, M&T spoke with a sheriff's deputy

11

who "looked at whatever lease agreement . . . referenced by the mortgagor and when he spoke with [the vendor] and deemed the lease to be legitimate." (Id. at 63.)

Based on the undisputed facts, Mr. Mace has not shown that M&T's failure to remove the occupants breached any duty owed to him.[4] And although M&T obtained bids for the necessary repairs after learning of the "dangerous building" designation, "[b]y the time the bids were received and reviewed, the appeal had been decisioned and the property reverted back to Mr. Mace." (Id. at 59–60.) In short, even assuming M&T owed Mr. Mace a duty to maintain the property during the pendency of the nearly four year-long appeal, Mr. Mace has not presented evidence showing that M&T breached that duty.

Moreover, there is insufficient evidence to establish that any breach directly caused Mr. Mace's damages. "Florida follows the 'more likely than not' standard in

---

[4] Although Mr. Mace asserts in his response that he "has not rented or attempted to the [sic] rent the home since M&T became the owner in 2016," he advances no evidence to refute the November 28, 2018 conversation with M&T's vendor. (Doc. 44 at 2.) Also underscoring the importance of pinpointing evidence on the record, Mr. Mace asserts that "[i]n or around November, 2018, [he] contacted M&T to inform M&T that unknown persons had moved into the property." (Id.) In support, he cites four pages of Mr. Mace's deposition testimony, none of which clearly supports the assertion. (Doc. 42 at 36–39.) Rather, Mr. Mace appears to testify that he called M&T around the same time he called an individual at a "third party company that was on the stickers on the door" after a visit to the property in April 2019. (Id. at 38–40.) However, he did not specify the content of any such conversation, and he testified that M&T "didn't know anything about" the occupants. (Id. at 38.)

Lastly, although Mr. Mace queries "why would [he] call the police on his own 'tenants' and then produce a lease to the sheriff that would allow the 'tenants' to stay in the home," (Doc. 44 at 2), he cites no evidence indicating that M&T was aware he called the police to report the occupants. In all events, even viewing this evidence in the light most favorable to Mr. Mace, summary judgment in M&T's favor is warranted.

12

proving causation, i.e., that the negligence 'probably caused' the plaintiff's injury." Cox v. St. Josephs Hosp., 71 So. 3d 795, 799 (Fla. 2011).  And a plaintiff cannot demonstrate causation "by relying on pure speculation."  Id.  A defendant is not liable to a plaintiff where there is an "efficient, independent intervening cause" of a plaintiff's injuries, even if "but for" a defendant's actions there would not have been an injury.  See Barnes v. Gulf Power Co., 517 So. 2d 717, 718 (Fla. 1st DCA 1987) (holding power company was not the cause of an attack on phone repairmen where negligent maintenance and delay by power company caused them to be at the location after dark).  For example, the court in Barnes reasoned that "[t]he defendant's negligence, at most, provided the occasion for the attack and resulting injuries."  Id.; see also Gehr v. Next Day Cargo, Inc., 807 So. 2d 189 (Fla. 3d DCA 2002); Sharon v. Luten, 165 So. 2d. 806 (Fla. 1st DCA 1964) (holding that fire of unknown origins resulting in damage was intervening cause and that damage to plaintiff's cars was not the direct result of shop owner's failure to turn off gas line).

Here, as Mr. Mace concedes, it was third parties, not M&T, which damaged the property.[5]  Although he argues that the third-party actions were "foreseeable,"

---

[5] Mr. Mace testified at his deposition as follows:

> Q: [W]hat type of remediation did you do at the property?
> A: There was mold in the garage.  These people had stole all of the – everything they could . . . [T]hey cut the pipes . . . .
> Q: You said these people and they, who are these people?
> A: I don't know who they were.  They were vagrants and squatters that were in the home.
> Q: But you don't think that was M&T's employees or agents in your house, right?

13

he does not identify evidence refuting M&T's evidence that it only stopped maintaining the property after believing Mr. Mace leased it. (Doc. 44 at 4–5.) And while he appears to challenge the reasonableness of M&T's actions, he does not present evidence to dispute it. (Doc. 44 at 2.) Nor does he specify what M&T should have done differently, or how it could have fulfilled any duty owed to him.

In summary, there is no genuine issue of material fact as to Mr. Mace's negligence claim, and judgment in M&T's favor is warranted on Count I.

## II. Unjust Enrichment

Summary judgment is also warranted in M&T's favor on Mr. Mace's unjust enrichment claim. First, M&T's reliance on a state court judgment and certificate of title constitutes a defense to the claim for damages. See Laird, 334 So. 2d at 651. Second, Mr. Mace has not made a prima facie showing of unjust enrichment.

The elements of unjust enrichment are: (1) a plaintiff has conferred a benefit on the defendant, who has knowledge of the benefit, (2) the defendant voluntarily accepted and retained the benefit, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying value to the

---

A: No. I don't know.
. . .
Q: By help, what do you mean?
A: By give their accounts of the occurrences and the life, the crime, drug dealing, partying that went on there.
Q: That's all done by those third parties we talked about?
A: What?
Q: The drugs and parties and all of that stuff?
A: Right.

(Doc. 42 at 56–57, 79–80.)

plaintiff.  See Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018).  In support of the claim, Mr. Mace merely alleges that M&T "was conferred a benefit by [Mr. Mace] or at [his] expense.  Namely, [M&T] enjoyed the exclusive use and benefit of the [p]roperty from July 2016–May 2020." (Doc. 4 at 6, ¶ 39.)  However, the record evidence on summary judgment, unrefuted by Mr. Mace, establishes that Mr. Mace did not confer any benefit to M&T.

For example, Mr. Mace did not pay any amounts on behalf of M&T, provide any services, or make any repairs to the property.  (Doc. 42 at 45–47.)  To the contrary, M&T undertook efforts to maintain the property.  And there is no evidence that M&T received any financial benefit from the property, such as from leasing the property, while it possessed the certificate of title.  (Id. at 37.)  Finally, M&T has not retained any benefit that could have been conveyed from Mr. Mace to M&T.  To the extent ownership of the property during the appeal constituted a benefit, the final judgment and certificate of title were vacated by the trial court and M&T is no longer the owner of the property.  (Id. at 46–47; Doc. 4 at 4, ¶ 26.)  In summary, there is no genuine issue of material fact as to Mr. Mace's unjust enrichment claim, and judgment in M&T's favor is warranted on Count II as well.

## CONCLUSION

Defendant M&T Bank's Motion for Summary Judgment (Doc. 39) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff, terminate any pending motions and deadlines, and close the file.

**ORDERED** in Fort Myers, Florida on December 20, 2021.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE